UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NIGHT BOX FILED
APR 15 2005
CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

VENTRASSIST PTY LTD. and UNIVERSITY OF TECHNOLOGY AT SYDNEY,

    Plaintiffs,

vs.

HEARTWARE, INC.,

    Defendant.

04-61703-CIV-MARRA/SELTZER

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO FILE SURREPLY

Defendant, HeartWare, Inc. ("HeartWare"), by and through its attorneys, and pursuant to Local Rule 7.1.C, hereby files its Memorandum in Opposition to Plaintiffs' Ventrassist Pty. Ltd. and University of Technology at Sydney (collectively, "Plaintiffs") Motion to File Surreply In Opposition to Response to Defendant's Motion to Dismiss, and in support thereof, respectfully states as follows.

**I.    INTRODUCTION**

As the Court is well-aware, HeartWare has moved for dismissal on the basis that Plaintiffs' suit is barred by the safe harbor provision of 35 U.S.C. §271(e)(1) because Defendant HeartWare's uses of its ventricular assist devices have been solely for uses reasonably related to development and submission of information to the FDA and it has made no submissions to foreign regulatory agencies. This issue has been fully, if not exhaustively, briefed. Plaintiffs now ask this Court to entertain a Surreply Memorandum ("Surreply") based on the erroneous conclusion that HeartWare has raised "new issues" in its Reply Memorandum. This is clearly improper under Local Rule 7.1.C, and no plausible justification exists for Plaintiffs to be afforded yet another opportunity to assert the same flawed arguments because Defendant's Reply did not raise any new issues. The Surreply does nothing more than regurgitate case law previously cited by the parties; label old issues as new, despite the fact that they were first raised in Plaintiffs' amended complaint and briefed in Plaintiffs' original response; and present new

CH1 10885273.1

testimony that should have been, but was not presented in Plaintiff's original response. Under such circumstances, Plaintiffs' Motion to File a Surreply must be denied.

## II. RELEVANT FACTS

### A. Procedural History

On December 21, 2004, Plaintiffs filed their original Complaint, which alleged that HeartWare was infringing U.S. Patent Nos. 6,227,797 and 6,609,883 under 35 U.S.C. §271. On February 7, 2005, HeartWare responded to the Complaint by filing a Motion to Dismiss or, in the alternative, for Summary Judgment on the grounds that HeartWare's activities fell within the exemption of 35 U.S.C. §271(e)(1) ("Motion to Dismiss").

On March 7, 2005, after receiving the Motion to Dismiss, Plaintiffs filed a First Amended Complaint which raised certain new issues. Nonetheless, the parties stipulated that the Motion to Dismiss was still applicable. Accordingly, Plaintiffs filed and served a Response to Defendant's Motion to Dismiss on March 14, 2005, in which Plaintiffs relied upon these new issues and argued, incorrectly, that they in some manner affected HeartWare's right to the §271(e)(1) exemption ("Response").

On April 4, 2005, HeartWare filed a Reply in support of its Motion to Dismiss ("Reply"). In accordance with Local Rule 7.1.C., HeartWare's Reply addressed those arguments, and *only* those arguments, raised in Plaintiffs' Amended Complaint and Response. Upon the filing of HeartWare's Reply, the Motion to Dismiss was fully briefed and ready for consideration by the Court.

### B. Plaintiffs Improper Submission To The Court

In the desperate hope to be heard yet again on the same issues, Plaintiffs' counsel sent a letter to the Court's chambers on April 6, 2005, attaching an <u>unsigned, uncertified,</u> and <u>incomplete</u> Motion to File Surreply and Surreply in Opposition to Response to Defendant's Motion to Dismiss ("Motion for Surreply"). According to the letter, counsel for Plaintiffs elected this *ex parte* procedure because "under the circumstances" it was necessary to immediately provide a "courtesy copy" to the Court, notwithstanding the fact that local counsel confirmed that the brief could not be completed in time to be filed on April 6th. It is difficult to imagine what circumstances would warrant submitting such a deficient document, particularly given the fact that, even if the Surreply were complete, its submission is prohibited by the applicable rules of procedure.

2

Nonetheless, on April 7, 2005, Plaintiffs filed an executed version of Plaintiffs' Motion for Surreply, including all exhibits.[1] Although fashioned as a request to file the Surreply itself, in actuality, the Motion for Surreply amounts to one line in which Plaintiffs request permission to file a "very short" brief to "address only new issues raised in Defendant's Reply Brief." Motion for Surreply, page 2. However, the balance of the motion is the Surreply, which contains previously cited case law, discusses issues previously covered in Plaintiffs' original response, and is anything but "brief." All told, the Surreply is nearly fifty (50) pages in length, and includes a new declaration and numerous attachments.

## III. ARGUMENT

### A. The Filing Of A Surreply Is Barred By The Local Rules Of Civil Procedure

As set forth in HeartWare's Motion to Dismiss, HeartWare's activities are exempt from infringement pursuant to the safe harbor provision of 35 U.S.C. §271(e)(1). Plaintiffs have been afforded a full and fair opportunity to address the substance of this motion in their Response and have done so. With the filing of HeartWare's Reply, no further legal memoranda can be submitted and the Motion to Dismiss became ripe for adjudication. Local Rule 7.1.C (motions are subject to supporting memoranda, opposition memoranda and reply memoranda, and "[n]o further or additional memorandum of law shall be filed without prior leave of Court"). Even counsel for Plaintiffs' letter to the Court concedes that HeartWare's motion "is fully briefed now." As such, the Plaintiffs' Motion should be denied under the prevailing rules governing civil procedure in the Southern District of Florida.

---

[1] Plaintiffs' Motion for Surreply accuses HeartWare of abusing the Protective Order simply because HeartWare filed a motion to maintain its "Attorneys Eyes Only" information under seal. These accusations are hollow and hypocritical. Plaintiffs *agreed* to HeartWare's filing of the original declarations under seal and *agreed* to accept them on an Attorneys Eyes Only basis. Plaintiffs then refused to do so for the supplemental declarations of these same individuals, addressing similar subject matter. Plaintiffs have now filed a motion to maintain the Declaration of Valentina Theisz under seal, which is submitted in support of Plaintiffs' Surreply. Ironically, Plaintiffs used the exact language that HeartWare's counsel drafted, claiming that Ms. Theisz' testimony relating to the Ventrassist's ventricular assist device, and information relating to submissions to the FDA, constitute confidential information. Apparently, if Plaintiffs take steps to protect such information, it is doing so in good faith, whereas if HeartWare does so, it is "abusing the Protective Order."

### B. There Is No Justification For The Court To Grant Leave To File A Surreply

#### 1. Plaintiffs Again Improperly Characterize The Prospectus And Raise The Same Irrelevant Arguments

Plaintiffs have failed to identify any "new issues" raised by HeartWare's Reply. Rather, Plaintiffs have elected to bombard the Court with a voluminous Surreply that is calculated to give them the last word, without introducing any new substance. Plaintiffs' Surreply, similar to its Response, once again attempts to twist the statements from the Prospectus of HeartWare Limited ("Prospectus") in an attempt to argue that HeartWare's activities are non-exempt. The Prospectus, however, provides such a global, prospective view that its information is not germane to the inquiry under 35 U.S.C. §271(e)(1). For example, Plaintiffs rely on the timetable chart provided at Section 5.3 of the Prospectus (Pls. Surr. Br. Ex. C). This chart in no way discloses the activities that HeartWare had undertaken prior to filing of the complaint, nor does it disclose that such activities are not solely for uses reasonably related to the submission of information to the U.S. Food and Drug Administration ("FDA"). The Plaintiffs' focus on the upper left corner of the chart that indicates that "Final Processes Prior to Human Implants" will be occurring in relation to Australian and EU Multicenter trials during the first quarter of 2005. It is true that the chart does not identify categories of trials that are occurring with respect to U.S. approvals during the same time period. Nevertheless, such activities are ongoing (as proven by declarations submitted by Defendants with its Motion to Dismiss and its Reply: Ex. 3, ¶¶ 10-20, Ex. 4, ¶¶ 26-28, Ex. 5, ¶¶ 9-14, Ex. 10, ¶¶ 8-10, Ex. 11, ¶¶ 5-8) even though not included in the Prospectus chart.

The Prospectus chart provides categories of limited types of activities with respect to clinical trials. Plaintiffs mischaracterize the chart as being completely inclusive in nature. This chart is by no means a complete list of all activities being conducted by HeartWare and is not characterized as such a list in the Prospectus. Thus, it is improper for Plaintiff to state, based on the blocks filled-in in the upper left portion of the Prospectus chart, that no HeartWare activities are occurring with respect to approval in the U.S.

In fact, as stated in the declaration in support of Defendant's Reply, HeartWare will be submitting parts of the same test data to regulatory agencies the U.S., Australia and Europe. (Ex. 11, ¶ 11). The order in which that data is submitted to each of the countries is not relevant to

whether the information is being developed for the FDA. Moreover, the first submission of information was made to the FDA by HeartWare on February 6, 2004,[2] and currently no submissions have been made to regulatory agencies outside the U.S. (Ex. 10, ¶15, Ex. 11, ¶9 to Defendant's Reply). Even if the information is eventually submitted to the Australian regulatory agency, that does not negate the fact that it is being developed also for FDA approval. While the Prospectus does focus on Australian activities since its purpose was to support HeartWare Limited's IPO in Australia, the Prospectus only provides a snapshot of certain types of information and is not an exhaustive list of all activities that have occurred at HeartWare.

    2.    **The Prospectus Does Not State That HeartWare's Activities Are Solely Directed To Australia Or Europe**

Contrary to Plaintiffs' claims, the Prospectus does not state that HeartWare's activities are directed "solely and entirely" to receiving regulatory approval in Australia or Europe. As has been stated in the declarations provided with Defendant's initial Motion to Dismiss, its activities will include seeking regulatory approval outside the U.S., but HeartWare's current activities also focus on obtaining approval of its devices within the U.S.

Similar to the arguments advanced in its Response, Plaintiffs' Surreply argues that the Prospectus indicates that Defendant's activities are "directed solely to submitting data to Australia and Europe … it is unclear whether the oversees' uses and data are even the same as that required for U.S. FDA approval, nor is there any relationship between the present uses and U.S. FDA approval." (Plfs. Surr. at p. 3, fn 3). To the contrary, by the submission of multiple Declarations, HeartWare has clearly proven that the data currently being developed for its LVAD is the same data that will be used in part for U.S., Australian and European regulatory agencies (See Ex. 10, ¶15 and Ex. 11, ¶11 to Defendant's Reply). As discussed above, the Prospectus does not disclose that HeartWare's activities are "solely" for oversees activities.[3] Any other

---

[2] On February 6, 2004, HeartWare made a pre-Investigational Device Exemption (IDE) submission to the FDA (See Exhibit 5, ¶10 to Defendant's Motion to Dismiss). HeartWare's representatives also met with FDA representatives in Rockville, Maryland on February 24, 2004, to discuss HeartWare's clinical protocol. (Ex. 5, ¶13).

[3] Plaintiffs reliance on *Scripps Clinical Research Foundation v. Genentech, Inc.*, 666 F. Supp. 1379 (N.D. Ca. 1987) is ill conceived. The *Scripps* decision has been criticized for confusing "the statutory concept of 'uses' with the concept of 'purpose,'" as being too restrictive and does not comport with the broad scope that the CAFC has given to the meaning of 271(e)(1).

5

CH1 10885273.1

explanation concerning the disclosure in the Prospectus is merely wishful thinking by Plaintiffs. The court is not required to use a crystal ball in order to guess whether the data may be used for other purposes. *See, Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1030 (Fed. Cir. 1997).

As Plaintiffs have admitted, "use directed to achieving FDA approval does not change merely because later that data is transmitted elsewhere." (Pls. Surr. Br. at p. 3 fn. 3) HeartWare's activities are exempt because the data is being developed for FDA approval. Even though HeartWare may use the same data for its submissions outside the U.S., it does not negate that there are current "uses" for developing the information for FDA approval. Thus, HeartWare's "uses" of its LVAD and MVAD clearly come under the exemption of 271(e)(1).

Plaintiffs have not provided any information that supports its position that HeartWare is conducting its testing "solely and entirely" to meet Australian and European requirements. Rather, HeartWare has presented multiple declarations in its Motion to Dismiss and Reply that refute Plaintiffs' position. No matter how hard Plaintiffs try to spin the information in the Prospectus, it cannot contradict HeartWare's position. Because Plaintiffs have failed to show any evidence in support of non-exemption, it has failed to meet its burden to show that there is a genuine issue of material fact and, in the least, HeartWare is entitled to Summary Judgment on this issue.

### 3. HeartWare's MVAD Is Also Exempt

The stale rhetoric of Plaintiffs' Surreply is even more pronounced with respect to the MVAD. Plaintiff is not only trying to twist the disclosures of the Prospectus to identify the MVAD activity as basic research and development, it also tries to invent an argument by relying on "what the Prospectus does not say." (Pls. Surr. Br. at p. 5). The Plaintiffs cannot rely on the *lack* of disclosure in the Prospectus in order to meet its burden to rebut Defendant's proof of exemption. In order to meet its burden to show that there are genuine issues of material fact, Plaintiffs must come forward with proof that the activities surrounding the MVAD are basic research and development and are non-exempt. Plaintiffs must also provide evidence that Defendant's use of its MVAD is more than *de minimis*. *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1269, 1288 (N.D. Cal. 1991). In *Intermedics*, the Court found all of Ventritex's "uses,"

---

*Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1525; (Fed. Cir. 1992), *Amgen, Inc. v. Hoechst Marion Roussel Inc.*, 3 F. Supp. 2d 104, 106 (D. Mass. 1998).

including continued demonstrations of its defibrillator device at trade shows subsequent to Ventritex's completing its list of potential investigators, were exempt under 271(e)(1). The court granted Summary Judgment and stated, "the magnitude of this use is readily exaggerated. On the record presented to us, a reasonable trier of fact could not conclude that this use was large or significant." *Id.* (*aff'd* 991 F.2d 808 (Fed. Cir. 1993)).

Similarly, in the present case, Plaintiffs are exaggerating HeartWare's use of its MVAD and taking statements in the Prospectus out of context in order to concoct its non-exemption arguments. Defendants have provided multiple declarations supporting its exemption that demonstrate that the LVAD and the MVAD are mature products[4] that are being tested and developed solely for uses reasonably related to the development and submission of information to the FDA. In view of Plaintiffs failure to provide evidence contradicting such exemption, HeartWare is entitled to Summary Judgment on this issue. Activities that do not "significantly threaten the interests that the limiting provisions of §271(e)(1) seek to protect…must be deemed *de minimus.*" *Id.*

### 4. Plaintiffs' Own Declarant Has Reversed Position

In order to improperly (under Local Rule 7.1.C) rebut Defendant's arguments in its Reply, Plaintiffs have submitted a follow-up declaration of its regulatory affairs "expert," Ms. Thiesz. In Ms. Thiesz' first declaration regarding good laboratory practices (GLP),[5] she stated that "results from these [GLP] tests could not be used to raise a submission to the FDA for an IDE." ¶ 17. Ms. Thiesz has now reversed course and contradicted her earlier statement. In the declaration in support of Plaintiff's Surreply, Ms. Thiesz now admits that the FDA will accept non-GLP data "where it can be shown that the justification for noncompliance with the GLP is

---

[4] The "use" by HeartWare of preparing a single precursory MVAD prototype is clearly *de minimus*. Nevertheless, the entirety of HeartWare's MVAD activity including design, drawing calculation, and computer modeling (all of which is non-infringing activity) builds on the development of the LVAD and has achieved a current MVAD design that is highly developed and relatively mature. Exhibit 10 ¶¶9-12 to Defendant's Reply).

[5] As discussed in Defendant's Reply brief, Plaintiffs raised a red herring issue with regard to good laboratory practices (GLP) data and whether it could be submitted to the FDA. Defendant pointed out that whether this data could be submitted or not, was irrelevant to the question of exemption, i.e., whether the data is solely for uses reasonably related to the development and submission of information to the FDA.

acceptable to the FDA." ¶ 9. Plaintiffs' credibility has been put in further question by the submission of this contradictory declaration with its Surreply.[6] Moreover, neither this declaration nor any other points raised in Plaintiffs' Surreply address any so-called "new issues," nor contradict any of the relevant facts supporting Defendant's exemption.

### 5. Plaintiffs Reiterate Previously Cited Case Law

Finally, all the case law cited in Plaintiffs' Surreply, with one exception,[7] has been previously cited by the Plaintiffs. Plaintiffs' regurgitation of previously cited case law does not warrant a deviation from the normal briefing schedule, and certainly does not advance Plaintiffs' argument that HeartWare raised "new issues" that required response in a Surreply.

## IV. CONCLUSION

It is true that "HeartWare's present conduct, not its motives, and not its subsequent use of the data are in issue." (Plfs. Surr. Br. at p. 4). Because there have been no submissions by HeartWare to foreign regulatory agencies, and its only "uses" have been for gaining approval of its ventricular assist device by the FDA --as shown by its submission on February 6, 2004 of its pre-IDE submission to the FDA-- HeartWare's actual activities are exempt. In view of the declarations submitted by HeartWare in its Motion to Dismiss and its Reply brief, HeartWare has proven its safe harbor exemption under §271(e)(1) and Plaintiffs have failed to raise any genuine issue of material fact with respect to these issues. Therefore, Plaintiffs' Motion to File its Surreply should be denied and, in any event, Defendants are entitled to a ruling in favor of its Summary Judgment Motion and the complaint should be dismissed.

---

[6] Ms. Thiesz has now nearly endorsed Defendant's position regarding non-GLP data as espoused by former FDA official, Ms. Rhona Shanker, who stated that FDA "regulations allow for non-GLP data to be submitted if there is a brief statement of the reasons for the non-compliance as provided by 21 C.F.R. §812.27(b)(3) (Defendant's Reply, Ex. 13, ¶ 17).

[7] As noted, *supra*, the *Scripps* case was cited in support of the argument that HeartWare's engaged in "commercial activities"—an argument that was previously asserted in Plaintiffs' Response.

CH1 10885273.1

|  |  |
|---|---|
|  | Respectfully submitted,<br><br>Feldman Gale, P.A.<br>Miami Center, Suite 1920<br>201 S. Biscayne Blvd.<br>Miami FL 33131<br>Tel: (305) 358-5001<br>Fax: (305) 358-3309<br><br>By: _____<br>James A. Gale<br>Florida Bar No. 371726<br>jgale@FeldmanGale.com<br>Gregory L. Hillyer<br>Florida Bar No. 682489<br>ghillyer@FeldmanGale.com |
| <u>Co-Counsel</u><br><br>George H. Gerstman, Esq.<br>David L. Newman, Esq.<br>SEYFARTH SHAW LLP<br>55 East Monroe Street<br>Suite 4200<br>Chicago, Illinois 60603 |  |

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing has been sent via Federal Express this 15TH day of April, 2005 to: Jeffrey I. Kaplan, Esq., Kaplan & Gilman, L.L.P., 900 Route 9 North, Woodbridge, NJ 07095 March J. Gottlieb, Esq., Akerman Senterfitt, Las Olas Centre II, Suite 1600, 350 East Las Olas Blvd., Ft. Lauderdale, FL 33301-2229.

_____

CH1 10885273.1